UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REBECCA A. BERGSTRESSER,          :
                                  :CIVIL ACTION NO. 3:15-CV-1744
          Plaintiff,              :
                                  :(JUDGE CONABOY)
          v.                      :
                                  :
CAROLYN W. COLVIN,                :
Acting Commissioner of            :
Social Security,                  :
                                  :
          Defendant.              :
                                  :

_____

**MEMORANDUM**

Here we consider Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging an onset date of April 19, 2012. (Doc. 1.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Patrick Cutter, concluded in his June 25, 2014, Decision that Plaintiff's severe impairments of chronic renal failure, degenerative joint disease right knee status-post knee replacement surgery, and residual right-sided weakness from childhood stroke did not alone or in combination with her multiple non-severe impairments meet or equal the listings.  (R. 23.)  ALJ Cutter also found that Plaintiff had the residual function capacity ("RFC") to perform sedentary work with certain nonexertional limitations and that she was capable of performing jobs that existed in significant numbers in the national economy.  (R. 23-28.)  The ALJ therefore found Plaintiff was not disabled under the Act.  (R. 29.)

With this action, Plaintiff asserts that the case should be remanded for further proceedings because the ALJ's finding that Plaintiff could perform jobs such as final assembler, inspector, and table worker lacks the support of substantial evidence and her evaluation of medical and non-medical evidence lacks the support of substantial evidence.  (Doc. 10 at 12.)  After careful consideration of the administrative record and the parties' filings, I conclude this appeal is properly granted.

## I. Background

### A.  Procedural Background

Plaintiff protectively filed for DIB on May 1, 2012.  (R. 20.) The claim was initially denied on January 4, 2013, and Plaintiff filed a request for a hearing before an ALJ on January 9, 2013. (R. 20.)

A hearing was held before ALJ Cutter on June 18, 2014.  (R. 31-49.)  Plaintiff, accompanied by her attorney, testified as did Vocational Expert ("VE") Brian Byerley.  (R. 65.)  As noted above, the ALJ issued his unfavorable decision on June 25, 2014.  (R. 29.)

On July 3, 2014, Plaintiff filed a Request for Review with the Appeals Council.  (R. 16.)  Noting that additional information submitted did not affect the ALJ decision because it addressed a later time period, the Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 7, 2015.  (R. 1-6.)  In doing so, the ALJ's decision became the decision of the Acting

Commissioner.  (R. 1.)

On September 4, 2015, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on November 13, 2015.  (Docs. 8, 9.)  Plaintiff filed her supporting brief on December 10, 2015.  (Doc. 10.)  Defendant filed her brief on January 4, 2016.  (Doc. 11.)  Plaintiff did not file a reply brief and the time for doing so has passed.  Therefore, this matter is ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on April 29, 1972--she was thirty-nine years old on the alleged onset date.  (R. 27.)  Plaintiff has a high school education and past relevant work as a childcare attendant.  (*Id.*)

**1.   Impairment Evidence**

Because Plaintiff's claimed errors relate specifically to her right side upper extremity weakness and fatigue, our review of the evidence focuses on these asserted problems.

**a.   Upper Extremity Weakness**

On February 6, 2008, Plaintiff saw Inwha Cho, M.D., for a neurological evaluation.  (R. 461-62.)  By history, he noted that Plaintiff had a stroke at the age of seven which resulted in spastic right hemiparesis.  (R. 461.)  Neurological examination included the following findings: spastic right hemiparesis, worse

3

in the right upper extremity; hand grip measure of twenty pounds on the right and thirty pounds on the left; and muscle strength of 4-5/5 in the right upper extremity.  (*Id.*)

Peter G. Uggowitz, M.D., of Carroll Family Medicine was Plaintiff's primary care physician.  (Doc. 10 at 3; *see also* R. 470.)  Plaintiff was often seen by his physician's assistant, Emily Wollenweber, PA-C.  (R. 469.)

In a letter dated January 28, 2013, Dr. Uggowitz noted that Plaintiff had been a patient since 2003, that her history included a cerebrovascular accident ("CVA"), and due to this and other illnesses, she was not able to be employed either full or part-time.  (R. 369.)  He added that he did not see her condition improving.  (*Id.*)

In a letter dated June 2, 2014, Ms. Wollenweber stated that Plaintiff had a right hemispheric cerebrovascular accident at the age of seven secondary to which she had chronic right spastic hemiparesis and examination showed right upper extremity limited range of motion and weakness.  (R. 469.)  Ms. Wollenweber further noted that the symptoms and examination findings had been present for many years.  (*Id.*)  She opined that the condition would not improve and may worsen over time, and she stated there was no medication that would benefit the condition.  (*Id.*)  In the attached Stroke Impairment Questionnaire of the same date, Ms. Wollenweber identified symptoms such as tremors, involuntary

4

movements, weakness, poor coordination, and loss of manual

dexterity.  (R. 471-72.)  She further opined that limitations

affecting Plaintiff's ability to work on a regular basis included

no pushing and pulling.  (R. 475.)  She limited Plaintiff's lifting

and carrying capabilities to her left upper extremity.  (R. 473.)

State agency consultant Thomas McLaughlin, M.D., evaluated

Plaintiff on December 11, 2012.  (R. 341-46.)  He noted that after

suffering a CVA at the age of seven, Plaintiff initially had

paralysis of the right arm and right leg, she was right-handed at

the time, she eventually learned to use her left hand, and she has

some movement in the right arm although "there [is] marked weakness

and contractures of the arm and hand."  (R. 341.)  Examination

showed the following: Plaintiff was unable to make a fist with her

right hand; she was unable to open a jar, open a door, pick up

coins and write with her right hand; her grip strength measured

eight kilograms of force on the right and twenty on the left; she

had 3/5 strength in her right upper extremity and 5/5 in the left;

and she could not accomplish rapid alternating movements with her

right upper extremity.  (R. 345-46.)  Dr. McLaughlin's

Impression/Plan included "CVA with resultant right sided weakness

and right upper extremity contractures."  (R. 346.)  In the

attached Medical Source Statement of Claimant's Ability to Perform

Work-Related Physical Activities, Dr. McLaughlin opined that

Plaintiff could only use her left upper extremity to lift and carry

and her abilities to push, pull, reach, handle, and finger were
also limited.  (R. 348-49.)

In a January 2, 2013, assessment, State agency consultant Juan
B. Mari-Mayans, M.D., reviewed the medical evidence, including Dr.
McLaughlin's evaluation.  (R. 50.)  In his analysis of activities
of daily living, Dr. Mari-Mayans records that Plaintiff reported
partial paralysis of the right side and he notes parenthetically
"not supported by evidence, knee pain, prepares meals, drives,
problems buttoning/zipping, no other problems with personal care,
socializes, no narcotics, PT was while clmt in elementary school."
(R. 53.)  Dr. Mari-Mayans recorded that Plaintiff was not able to
make a fist with her right hand, was "able to perform fine/dextrous
with left hand," and had 3/5 strength in her right upper extremity
and 5/5 in the left.  (R. 54.)  He concluded Plaintiff had no
restrictions in her activities of daily living, she could lift
and/or carry ten pounds occasionally and less than ten pounds
frequently, she was unlimited in her abilities to push and/or pull,
and she had no manipulative limitations.  (R. 56-57.)  In his
evaluation of Dr. McLaughlin's opinion, Dr. Mari-Mayans opined that
great weight could not be given to the opinion: the limitations
found were not consistent with all of the evidence and non-medical
evidence in the claims file; it appeared Dr. McLaughlin "relied
heavily on the subjective report of symptoms and limitations
provided by the claimant"; and the evidence provided in the report

is based on an isolated exam and is an overestimation of the severity of Plaintiff's limitations.  (R. 57.)

**b.   Fatigue**

Recognizing that fatigue is a symptom rather than an impairment, following is a brief review of the evidence to which Plaintiff points in support of this reported symptom (*see* Doc. 10 at 17 (citing R. 24, 26, 388, 392, 416, 421, 440, 443)) and other pertinent evidence of record.[1]

Primary care records indicate that Plaintiff was seen on March 13, 2013, with multiple complaints including fever, body aches, and right lower quadrant pain.  (R. 392.)  The Review of Systems was positive for fatigue.  (*Id.*)

On March 19, 2013, Plaintiff was seen for follow up after being hospitalized for two days due to a urinary tract infection. (R. 388.)  The Review of Systems was again positive for fatigue. (*Id.*)

At her April 17, 2013, follow up visit, conducted by Ms. Wollenweber, Plaintiff's "Active Problem List" includes "Anemia Unspecified."  (R. 383.)  Historically, Ms. Wollenweber reported that Plaintiff was anemic when she was in the hospital in March

---

[1]  The first citation is to Plaintiff's testimony regarding fatigue which will be reviewed later in this Memorandum, and the second citation is to the ALJ's conclusion that there is no medical basis to support Plaintiff's related allegations.  (*Id.* (citing R. 24, 26).)  Plaintiff's remaining citations refer to primary care office records.  (*Id.* (citing 388, 392, 416, 421, 440, 443).)

2013: her hemoglobin then was 10.3 and her April 10th blood work
showed the level had increased to 11.6.  (R. 384.)  The Review of
Systems was negative for fatigue.  (*Id.*)  Plaintiff's medications
included Slow Release Iron 168 mg. (50 mg. iron) one tablet daily.
(R. 386.)

On May 30, 2013, Plaintiff reported a urinary tract infection
with symptoms including sweats and chills, fatigue, back pain, and
mild right lower quadrant abdominal discomfort.  (R. 420.)  The
Review of Systems was positive for fatigue.  (R. 421.)  Assessment
included Anemia Unspecified and her medications included slow
release iron.  (*Id.*)

At her November 2013 annual physical, Plaintiff again reported
fatigue and continued to take iron.  (R. 416.)

Plaintiff again had a urinary tract infection in February 2014
and reported fatigue.  (R. 443.)  She continued to take slow
release iron.  (*Id.*)

In May 2014, Plaintiff saw Ms. Wollenweber with a chief
complaint of feeling off balance.  (R. 440.)  Ms. Wollenweber
recorded chronic right side weakness related to the CVA when she
was seven and also noted fatigue in her Review of Systems and
continuation of slow release iron.  (*Id.*)

2.   **Hearing Testimony**

At the June 18, 2014, hearing, Plaintiff testified that she
gets "so tired all the time" and she has to take naps throughout

the day. (R. 36.)  Upon further questioning, she said she took two

naps a day, and it was too much for her to be on her feet all day.

(*Id.*)

Regarding activities of daily living, Plaintiff said she did

grocery shopping but she did it with her husband's help because she

could not lift.  (R. 39.)

When questioned about her part-time job at Rite Aid, Plaintiff

testified that she missed work sometimes because of depression,

explaining

> I would just break down and my arm from my
> stroke would actually hurt.   It--because the
> computer--the cash register was on the side
> that I would have to use my right hand but I
> couldn't use it.  I had to balance or
> maneuver however I could, just to use my left
> hand because I can't use my right hand for
> manipulative things.

(R. 41-42.)  She also said she gets tingling and stiffness in her

right arm and it tenses up to the point that it gets very painful.

(R. 42.)  Plaintiff added she has had the problems since she had

the stroke when she was seven and there is no medication that will

help. (*Id.*)

Plaintiff's attorney asked her to explain how she was able to

work for a long time with her chronic conditions and what had

changed.  (R. 44.)  Plaintiff responded that her concentration and

right arm condition had worsened.  (*Id.*)  Regarding her arm, she

noted it had always been bad but "I have to focus on just keeping

it down because if I don't, it'll curl up into a ball."  (*Id.*)

9

The ALJ posed a hypothetical question to VE Byerley concerning

> a hypothetical individual who has the same
> vocational profile as the claimant and has a
> residual functional capacity to perform a
> range of sedentary work . . . subject to the
> following limitations.  The individual should
> avoid climbing, kneeling, crouching, or
> crawling; would require a cane for prolonged
> ambulation.  The work should involve only
> routine, repetitive, one to two step type
> tasks, occasional changes, and occasional
> decision-making.

(R. 45-46.)  The VE testified that such an individual would not be able to perform Plaintiff's past work.  (R. 46.)  The VE then identified examples of positions the hypothetical individual would be able to perform: final assembler, inspector, and table worker (which is also an inspector occupation).  (*Id.*)  He testified that if the individual were not able to push, pull, kneel, bend, or stoop, she would still be able to perform the jobs identified.  (R. 47-48.)  The VE further testified that the individual would not be able to maintain employment if she were off task twenty percent of the  work time or consistently missed work two or three times a month.  (*Id.*)

## 3.  **ALJ Decision**

ALJ Cutter made the following Findings of Fact and Conclusions of Law:

> 1.   The claimant meets the insured status
>      requirements of the Social Security Act
>      through December 31, 2016.
>
> 2.   The claimant has not engaged in
>      substantial gainful activity since April

10

19, 2012, the alleged onset date (20 CFR
404.1571 et seq.).

3.    The claimant has the following severe
      impairments: chronic renal failure,
      degenerative joint disease right knee
      status-post knee replacement surgery,
      and residual right-sided weakness from
      childhood stroke (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment
      or combination of impairments that meets
      or medically equals the severity of one
      of the listed impairments in 20 CFR Part
      404, Subpart P, Appendix 1 (20 CFR
      404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the
      entire record, the undersigned finds
      that the claimant has the residual
      functional capacity to perform sedentary
      work as defined in 20 CFR 404.1567(a)
      subject to the following.  She must not
      climb, kneel, crouch or crawl and
      requires a cane for prolonged
      ambulation.  She is limited to routine,
      repetitive 1-2 step tasks, occasional
      changes and occasional decision-making.

6.    The claimant is unable to perform any
      past relevant work (20 CFR 404.1565).

7.    The claimant was born on April 29, 1972
      and was 39 years old, which is defined
      as a younger individual age 18-44, on
      the alleged disability onset date (20
      CFR 404.1563).

8.    The claimant has at a least a high
      school education and is able to
      communicate in English (20 CFR
      404.1564).

9.    Transferability of job skills is not
      material to the determination of
      disability because using the Medical-
      Vocational Rules as a framework supports
      a finding that the claimant is "not

11

disabled," whether or not the claimant
has transferable job skills (See SSR 82-
41 and 20 CFR Part 404, Subpart P,
Appendix 2).

10.  Considering the claimant's age,
education, work experience, and residual
functional capacity, there are jobs that
exist in significant numbers in the
national economy that the claimant can
perform (20 CFR 404.1569 and
404.1569(a)).

11.  The claimant has not been under a
disability, as defined in the Social
Security Act, from April 19, 2012,
through the date of this decision (20
CFR 404.1520(g)).

(R. 22-28.)

Regarding Dr. McLaughlin's evaluation, the ALJ noted
Plaintiff's inability to make a fist, open a jar, open a door, pick
up coins, and write with her right hand.  (R. 25.)  He also noted
grip strength of eight kilograms on the right and twenty on the
left, and 2/5 strength in the right upper extremity compared with
5/5 on the left.  (*Id.*)

In support of his determination that objective medical
evidence and the overall record did not support the extreme
symptoms and limitations alleged, ALJ Cutter noted that there was
"no evidence to support her right arm weakness has worsened."  (R.
26.)  He also concluded there was no medical basis to support her
allegation that she is fatigued all day every day and must nap for
several hours.  (*Id.*)

As for opinion evidence, ALJ Cutter's explanation for the

little weight assigned to Ms. Wollenweber's June 2014 reports included his observation that Plaintiff "worked for years despite the stroke residuals, which have remained stable" and no clinical findings support total restrictions in bending, pushing, pulling, and stooping which, even if credited, would not preclude the jobs identified by the VE.  (R. 26.)

For similar reasons, ALJ Cutter undermined Dr. Uggowitzer's opinion provided in a narrative letter in January 2013 that the reasons Plaintiff was unable to work included her stroke residuals. (*Id.*)  The ALJ noted that Plaintiff has "mild right-sided weakness and has functioned well despite this."  (*Id.*)

Little weight was assigned to Dr. McLaughlin's opinion regarding manipulative limitations because ALJ Cutter found "no convincing evidence to support these are warranted since the residual weakness in her nondominant right upper extremity has remained stable and she has functioned adequately at work and with activities of daily living despite this."  (R. 27.)

ALJ Cutter assigned significant weight to Dr. Mari-Mayans' opinion that Plaintiff was capable of light work because he found it well supported by the objective medical evidence and the overall record.  (*Id.*)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

13

determine whether a claimant is disabled.[2]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e).  The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 27-28.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result

16

but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See, e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the case should be remanded for further proceedings because the ALJ's finding that Plaintiff could perform jobs such as final assembler, inspector, and table worker lacks the support of substantial evidence and her evaluation of medical and non-medical evidence lacks the support of substantial evidence. (Doc. 10 at 12.)  In essence, these claimed errors attack the ALJ's RFC determination based on both credibility and medical evidence grounds and also attack his hypothetical question formulation and conclusions drawn by the VE based on the question posed.

**A.   *Medical and Opinion Evidence***

Plaintiff states the "most critical problem" with the RFC is ALJ Cutter's failure to account for Plaintiff's significant manipulative limitations affecting her right upper extremity. (Doc. 10 at 13.)  Defendant maintains this argument is without merit because the evidence shows that, despite Plaintiff's right-sided weakness from the childhood stroke, she was able to perform substantial gainful activity for fifteen years, the stroke did not result in severe manipulative limitations, and the ALJ was not required to include additional restrictions in his RFC assessment. (Doc. 11 at 14.)  I conclude this claimed error is cause for remand.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.  *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).  This principal is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit.  *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).  The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

19

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Similarly, greater deference is due an examining source than a non-examining source.   20 C.F.R. § 404.1527(c)(1).  Section 404.1527(c)(3) provides the following:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

*Id.*

In evaluating the medical opinions/evaluations of Dr. Uggowitzer, Ms. Wollenweber, and Dr. McLaughlin regarding right upper extremity/residual stroke problems, the ALJ attributed the

21

little weight he assigned them to the following reasons: Plaintiff had worked for many years despite the stroke residuals; the residual weakness in her right upper extremity had remained stable; postural and manipulative limitations are inconsistent with Plaintiff's activities of daily living; and the limitations were not supported by other medical evidence or the record as a whole. (R. 26-27.)

While it is true that Plaintiff worked for many years with residual right upper extremity weakness from the stroke, evidence suggests that the condition may have worsened over time.  Dr. Cho's 2008 evaluation showed a right hand grip measure of 20 pounds and muscle strength of 4-5/5 in the right upper extremity.  (R. 461.) In December 2012, Dr. McLaughlin measured right hand grip pressure of 8 kilograms (approximately 17.5 pounds) and muscle strength of 3/5 in the right upper extremity.  (R. 345.)  Therefore, objective evidence shows a weakening in Plaintiff's right upper extremity. This evidence may also support Plaintiff's testimony that her right arm condition has worsened since she worked full time.  (R. 44.)

The ALJ does not discuss Dr. Cho's evaluation.  Although it was well before the relevant time period, to the extent the evaluation indicates that the condition was worse during the relevant time period (as assessed by Dr. McLaughlin (R. 345)) and contradicts the ALJ's conclusion that Plaintiff's stroke residuals remained stable (R. 26, 27), Dr. Cho's evaluation is probative

evidence which, pursuant to *Cotter*, 642 F.2d at 706-07, should have been discussed.

Further, it does not necessarily follow that an ability to perform a job in the past with one-sided upper extremity weakness establishes an ability to do other jobs.  This is particularly so when the individual is no longer capable of doing the past work, as is the case here.  The applicability of this general observation to this case is supported by Plaintiff's testimony that, although she had been able to do childcare work in the past, she later had difficulty being a part-time cashier because of her right upper extremity weakness.  (R. 41-42.)

As to the ALJ's finding that the right upper extremity limitations were not supported by medical evidence or the record as a whole, certainly Dr. McLaughlin's objective testing/examination is consistent with Ms. Wollenweber's evaluation/opinion.  (*See* R. 341-55, 469-75.)  The ALJ points to no specific medical evidence which contradicts Dr. McLaughlin's objective findings regarding Plaintiff's right upper extremity or the resultant limitations found in his Medical Source Statement, and my review of the record reveals none.  Thus, the ALJ's treating and examining source assessments are not consistent with the guidance set out in 20 C.F.R. § 404.1527 and relevant Third Circuit caselaw.  *See*, *e.g.*, *Morales*, 225 F.3d at 317.

This problem is not offset by the ALJ's reference to

activities of daily living.  The ALJ states that he finds no convincing evidence to support Dr. McLaughlin's manipulative limitations in part because Plaintiff has functioned adequately with activities of daily living with the weakness in her right upper extremity.  (R. 27.)  This is not persuasive support for his determination in that an ability to accommodate manipulative and upper extremity limitations in the daily activity context does not necessarily mean that the limitations will not impact the demands of a full-time job where an individual may be required to accomplish tasks in a timely and specific manner.  Thus, without more explanation and analysis, this basis for the ALJ's determination cannot be considered substantial support.

Because the reasons provided by the ALJ for discounting the treating and examining source opinions are not supported by a fair reading of the record and are not consistent with relevant caselaw and pertinent regulations, the weight afforded these opinions is not supported by substantial evidence.

The ALJ's finding that Dr. Mari-Mayans evaluation is entitled to greater weight than that of the treating and examining sources is also problematic because substantial evidence does not support the reason provided for the reliance, i.e., "the objective medical evidence and overall record" supports Dr. Mari-Mayans' opinion. (R. 27.)  The only objective assessments of Plaintiff's right upper extremity show muscle strength and grip pressure weakness.  (R. 345, 461.)  *Based upon his examination and range of motion testing*,

Dr. McLaughlin identified resulting limitations in right hand and upper extremity functioning. (R. 341-53.) The objective basis for Dr. McLaughlin's opinion undermines both the ALJ's conclusion that there is "no convincing evidence" to support manipulative limitations and also undermines Dr. Mari-Mayans' assessment that Dr. McLaughlin appeared to rely heavily on the subjective report of symptoms and limitations. (R. 27, 57.) Dr. Mari-Mayans' discounting of Dr. McLaughlin's opinion on the basis that it was an isolated examination is also unfounded to the extent it relates to Plaintiff's upper extremity weakness and manipulative limitations in that evidence shows the weakness is chronic and no medical evidence indicates greater abilities than those objectively assessed by Dr. McLaughlin. Because Dr. Mari-Mayans' explanation for his assessment is not well supported and he did not consider all of the pertinent evidence, *see* 20 C.F.R. § 404.1527(c)(3), I conclude the ALJ's assignment of significant weight to the opinion is not supported by substantial evidence.

This analysis shows that the ALJ did not properly assess the medical evidence and medical opinions. It appears that he has impermissibly substituted his lay opinion, in part based on speculation, for that of the treating and examining sources regarding the limitations associated with Plaintiff's right upper extremity problem, and this he cannot do. *Morales*, 225 F.3d at 317. Thus, I cannot conclude that his RFC determination is supported by substantial evidence.

Defendant appears to argue that any error in the ALJ's RFC determination would be harmless because Plaintiff's ability to do the jobs identified by the ALJ would not be diminished by his right upper extremity limitations.  (R. 18-19.)  While the VE testified that Plaintiff could perform the exemplary sedentary jobs with the added limitation that she could not push or pull (R. 47), he did not address manipulative limitations.  This is significant in that Defendant does not refute Plaintiff's assertion that sedentary occupations generally require bilateral manual dexterity.  (Doc. 11 at 20 (citing Doc. 10 at 16).)  Rather, Defendant states that

> substantial evidence supports the ALJ's finding that Plaintiff's impairments include residual right-sided weakness from childhood stroke with no additional manipulative limitations (Tr. 22).  As previously discussed, Plaintiff performed substantial gainful activity for fifteen years with residual right-sided weakness, and there is no evidence of record that her condition has worsened (Tr. 24).

(Doc. 11 at 20.)  As I have previously pointed to the problems with reliance on these assertions, I cannot find the ALJ's error regarding the RFC and its step five impact harmless.  Therefore, remand is required.

**B.   Credibility**

Plaintiff criticizes the ALJ's credibility finding on several bases, including the record support for Plaintiff's claims regarding fatigue and her work history.  (Doc. 10 at 17.) Defendant maintains the ALJ did not err in his credibility

evaluation.  (Doc. 11 at 20.)  As I have determined that remand is required, only brief discussion regarding the ALJ's credibility finding is warranted.

ALJ Cutter states there is no medical evidence to support Plaintiff's allegation that she is fatigued all day, every day. (R. 26.)  This may be true to a point, but the ALJ does not mention the fact that Plaintiff has been treated for anemia since she was hospitalized in March 2013 and anemia is consistently listed as an ongoing medical problem since that time.  *See supra* pp. 7-9.  As this may be probative evidence related to fatigue, the ALJ should have considered it and it should be addressed upon remand.

Discussion of a claimant's work history is not required and the case would not be remanded on this basis alone.  However, because the case is remanded on other bases, the ALJ should also address this issue.

### V. Conclusion

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration.  An appropriate Order is filed simultaneously with this action.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: February 11, 2016

27